IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | |
|---|---|
| Jasmine M. Rhodall, ) | |
| ) | C/A No. 1:10-3195-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Verizon Wireless of the East, L.P., d/b/a ) | |
| Verizon Wireless, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Jasmine M. Rhodall filed the within action on December 17, 2010 against her former cellular phone carrier, Defendant Verizon Wireless of the East, L.P. Plaintiff filed an amended complaint on January 7, 2011.

This matter is before the court on Defendant's motion to dismiss to compel arbitration, which motion was filed on January 21, 2011. Plaintiff filed a response in opposition on February 4, 2011, to which Defendant filed a reply on February 14, 2011. The court held a hearing on April 5, 2011. The court concludes that Defendant's motion should be granted.

I. FACTS

Plaintiff alleges that in December 2009 she visited Defendant's store at Aiken Mall, South Carolina, where she entered into a Customer Agreement (the "Agreement") with Defendant for the purchase of a cellular phone and service. Am. Compl. ¶¶ 5, 6 (ECF No. 7). Plaintiff determined that the cellular phone and/or service were not satisfactory. Accordingly, she returned the phone to Defendant's store and cancelled the Agreement on or about January 28, 2010. Id. ¶ 7. On or about February 18, 2010, Plaintiff received a billing statement from Defendant that indicated her phone

and account were still active. Id. ¶ 8. Plaintiff discovered that employees of Defendant's store had appropriated Plaintiff's phone and account for their personal use. Id. ¶ 9. Plaintiff notified law enforcement officials and advised Defendant of the fraudulent actions of the employees of Defendant's store. Nevertheless, Defendant continued to bill Plaintiff for calls charged to her account. Plaintiff's account incurred charges in excess of $900.00. Id. ¶¶ 10-13. In or around August 2010, Defendant referred the account to a collection agency. Plaintiff disputed the delinquency and notified the collection agency of the fraudulent activity. Id. ¶ 14. The collection agency returned the account to Defendant. Defendant turned the account over to a second collection agency. Id. ¶ 16.

In September 2010, Plaintiff obtained credit reports showing that Defendant had reported her account as delinquent and in collection. Id. ¶ 17. Plaintiff disputed Defendant's reporting to the credit agencies. However, according to Plaintiff, Defendant failed to conduct an adequate reinvestigation of her dispute, and verified its reporting as accurate to the credit agencies. Id. ¶ 20, 21. Plaintiff contends that she remains obligated on a fraudulent account, has suffered a loss of creditworthiness and damage to her reputation, has expended time attempting to rectify the situation, and has suffered extreme emotional distress. ¶ 22. Plaintiff alleges causes of action for violation of the Fair Credit Billing Act, 15 U.S.C. ¶ 1620(f); and Fair Debt Collection Practices Act, 15 U.S.C. ¶ 1692a(4) (First Cause of Action); violation of the Fair Credit Reporting Act (Second Cause of Action); violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 et seq. (Third Cause of Action); and negligent hiring and supervision (Fourth Cause of Action).

## II. DISCUSSION

Defendant brings this motion pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-9.

The Federal Arbitration Act provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA stands as "'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP, 645 F.3d 267, 272 (4th Cir. 2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983)). Its "'primary purpose . . . is to ensure that private agreements to arbitrate are enforced according to their terms.'" Id. (quoting Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1773 (2010)). In interpreting arbitration agreements, the courts must resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. Id. (quoting Moses H. Cone, 460 U.S. at 24–25).

     To compel arbitration, Defendant must demonstrate (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision that purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of Plaintiff to arbitrate the dispute. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002). "'To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim.'" Hightower v. GMRI, Inc., 262 F.3d 239, 242 (4th Cir. 2001) (quoting J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir.1988)). There is no question that there is a dispute between the parties, as evidenced by the Complaint. Further, there is no question that Plaintiff refuses to arbitrate the dispute. The first and fourth factors are satisfied.

As to the third factor, it is well settled that telephones, including cellular telephones, are instrumentalities of interstate commerce. See United States v. Mandel, No. 09-4116, 2011 WL 3200697 (7th Cir. 2011); United States v. Evans, 476 F.3d 1176 (11th Cir. 2007); United States v. Marek, 238 F.3d 310 (5th Cir. 2001); United States v. Gilbert, 181 F.3d 152 (1st Cir. 1999); United States v. Weathers, 169 F.3d 336 (6th Cir. 1999); United States v. Clayton, 108 F.3d 1114 (9th Cir. 1997). The court turns to the second factor, whether there exists a written agreement that includes an arbitration provision that purports to cover the dispute.

A.  Is There A Written Agreement That Includes an Arbitration Provision

The Agreement provided:

**I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT (CA), INCLUDING THE CALLING PLAN, (WITH EXTENDED LIMITED WARRANTY/SERVICE CONTRACT, IF APPLICABLE), AND OTHER TERMS AND CONDITIONS FOR SERVICES AND SELECTED FEATURES I HAVE AGREED TO PURCHASE AS REFLECTED ON THE RECEIPT, AND WHICH HAVE BEEN PRESENTED TO ME BY THE SALES REP, AND WHICH I HAD THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING TO AN EARLY TERMINATION FEE PER LINE OF UP TO $175, OR UP TO $350 ON ADVANCED DEVICES (SEE VERIZON WIRELESS.COM/ADVANCED DEVICES FOR DETAILS), LIMITATIONS OF LIABILITY FOR SERVICE AND EQUIPMENT, SETTLEMENT OF DISPUTES BY ARBITRATION AND OTHER MEANS INSTEAD OF JURY TRIALS AND OTHER IMPORTANT TERMS IN THE CA.**

ECF No. 10-2, 2. It appears that Plaintiff signed the page beneath the referenced language. ECF No. 10-2, 2.

In addition, the Verizon "Customer Agreement Terms & Conditions" provided:

**THIS AGREEMENT STARTS WHEN YOU ACCEPT**. Paragraphs marked "∞" continue after it ends. You accept when you do any of the following things after an opportunity to review this agreement:

> • *Give us a written or electronic signature;*
> • *Tell us orally or electronically that you accept;*
> • *Activate your service through your wireless device;*
> • *Open a package that says you are accepting opening it; or*
> • *Use your service after making any change or addition when we've told you that the change or addition requires acceptance.*
>
> **IF YOU DON'T WANT TO ACCEPT, DON'T DO ANY OF THESE THINGS**. You can cancel (if you're a customer and not assuming another customer's service) **WITHIN 30 DAYS** of accepting. You'll still be responsible through that date for the new service and any charges associated with it.

ECF No. 10-3, 1.

Further, the Agreement provided:

> ∞ **WE EACH AGREE TO SETTLE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS PROVIDED BELOW. THERE'S NO JUDGE OR JURY IN ARBITRATION, BUT AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME LIMITATIONS IN THIS AGREEMENT, AS A COURT WOULD. IF AN APPLICABLE STATUTE PROVIDES FOR AN AWARD OF ATTORNEY'S FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO EACH AGREE, TO THE FULLEST EXTENT PERMITTED BY LAW, THAT:**
>
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR QUALIFYING SMALL CLAIMS COURT CASES, ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY PRIOR AGREEMENT FOR WIRELESS SERVICE WITH US OR ANY OF OUR AFFILIATES OR PREDECESSORS IN INTEREST, OR ANY PRODUCT OR SERV ICE PROVIDED UNDER OR IN CONNECTION WITH THIS AGREEMENT OR SUCH A PRIOR AGREEMENT, OR ANY ADVERTISING FOR SUCH PRODUCTS OR SERVICES, WILL BE SETTLED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). . . .

Id.

It appears from plain language set forth hereinabove that the Agreement contained arbitration provisions that were to survive termination of the Agreement. Plaintiff asserts, however, that

because she canceled the Agreement within thirty days in accordance with its terms, the arbitration provisions are not enforceable. Plaintiff argues that the Agreement was cancelled, and that a cancelled or "void" contract is not a contract at all. Therefore, according to Plaintiff, no contract exists by which the parties are bound to arbitrate.

In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006), the Supreme Court determined that, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract and is enforceable apart from the remainder of the contract. The Court noted that, unless the challenge is to the arbitration clause itself, the issue of a contract's validity is considered by the arbitrator in the first instance. Id. at 445-46; see also Snowden v. CheckPoint Check Cashing, 290 F.3d 631 (4th Cir. 2002) (noting that "if a party seeks to avoid arbitration . . . by challenging the validity or enforceability of an arbitration provision on any grounds that 'exist at law or in equity for the revocation of any contract,' 9 U.S.C. § 2, the grounds 'must relate specifically to the arbitration clause and not just to the contract as a whole'"). This rule of law applies to challenges that, as in this case, would render the contract void or voidable. Id. at 446-48.

Plaintiff asserts that Defendant "hopes to force Plaintiff, and presumably other customers who decide not to do business with Defendant after a trial period [to comply] with the same arbitration provision that applies to those who actually enter into a service plan." Resp. to Def.'s Mot. to Dismiss 13 (ECF No. 13). Plaintiff's contention is of no moment. The Buckeye Check Cashing Court acknowledged that the rule permits the enforcement of an arbitration agreement in a contract that the arbitrator later finds to be void. Id. at 448. The court concludes that the parties entered into a written agreement containing an arbitration provision.

B.        Does the Dispute Fall Within the Scope of the Agreement

As noted hereinabove, the arbitration provisions cover "any controversy or claim arising out of or relating to th[e] Agreement . . . or any product or service provided under or in connection with th[e] Agreement . . . ."  Similar arbitration provisions to that contained in the Agreement have been characterized as "broad arbitration clauses capable of expansive reach." Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 397-98 (1967)).  Broad arbitration clauses are not limited to claims that literally arise under the contract but embrace all disputes between the parties having a significant relationship to the contract, regardless of the label attached to the dispute. Id.

Defendant's alleged reporting of erroneous information to the various credit agencies constitutes a controversy "arising out of or relating to" the Agreement and was contemplated by the parties. See, e.g., Agreement, CA-P7 (ECF No. 10-3) ("Further, you authorize us to . . . share credit information about you with credit reporting agencies").  Thus, Plaintiff's statutory claims under the Fair Credit Billing Act, Fair Debt Collection Practices Act, Fair Credit Reporting Act, and Unfair Trade Practices Act fall within the ambit of the broad arbitration language.  Plaintiff contends, however, that the actions of Defendant's agents or employees with respect to the unauthorized use of the phone and account are not within the scope of the Agreement.  However, the fact that Plaintiff alleges tort claims for negligent hiring and supervision does not take the case out of the scope of arbitration. The conduct of Defendant's agents or employees had a significant relationship to the Agreement.  The claims asserted by Plaintiff arise only by virtue of her having entered into the Agreement in the first instance.  The court concludes that the claims asserted by Plaintiff in the

complaint fall within the scope of the arbitration agreement.

### III.  CONCLUSION

For the reasons stated, Defendant's motion to dismiss to compel arbitration (ECF No. 10) is **granted**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 9, 2011