IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | | |
|---|---|---|
| Jasmine Rhodall, | ) | |
| | ) | C/A No. 1:10-3195-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **O R D E R** |
| Verizon Wireless of the East, L.P., d/b/a | ) | |
| Verizon Wireless, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Jasmine M. Rhodall filed the within action against her former cellular phone carrier, Defendant Verizon Wireless of the East, L.P., alleging causes of action under the Fair Credit Billing Act, 15 U.S.C. § 1620(f), and Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(4) (First Cause of Action; Fair Credit Reporting Act, 15 U.S.C. § 1681b (Second Cause of Action); and South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 et seq. (Third Cause of Action); as well as state law claims for negligent hiring and supervision (Fourth Cause of Action).

On January 21, 2011, Defendant filed a motion to dismiss to compel arbitration. Plaintiff filed a response in opposition on February 4, 2011, to which Defendant filed a reply on February 14, 2011. The court held a hearing on April 5, 2011. On September 9, 2011, the court issued an order which found in favor of Defendant as to the dispositive issues regarding (1) the existence of a written agreement that includes an arbitration provision, and (2) whether the dispute falls within the scope of the agreement. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (holding that, to compel arbitration, a defendant must demonstrate (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision that purports to cover the

dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the plaintiff to arbitrate the dispute). Accordingly, the court granted Defendant's motion to dismiss.  ECF No. 19.

This matter now is before the court on Plaintiff's motion to alter or amend judgment, which motion was filed on October 6, 2011.  See Fed. R. Civ. P. 59(e).  Defendant filed a memorandum in opposition to Plaintiff's motion on October 24, 2011, to which Plaintiff filed a reply on November 3, 2011.  The court concludes that Plaintiff's motion should be denied.

Although Rule 59 addresses grounds for new trials, some courts have reasoned that the concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury.  11 Wright & Miller, Federal Practice & Procedure § 2804.  Notwithstanding the broad nature of Rule 59, motions for reconsideration are disfavored.  They are not a matter of routine practice.  Settino v. City of Chicago, 642 F. Supp. 755, 759 (N.D. Ill. 1986).  Several courts have observed that they are neither expressly cognizable under the Federal Rules of Civil Procedure nor authorized by the local rules of the district court.  See, e.g., Fisher v. Samuels, 691 F. Supp. 63, 74 (N.D. Ill. 1988).

Motions for reconsideration are inappropriate merely to introduce new legal theories or new evidence that could have been adduced during the pendency of the prior motion.  Keene Corp. v. International Fidelity Ins. Co., 561 F. Supp. 656 (N.D. Ill.), aff'd, 736 F.2d 388 (7th Cir. 1982).  The Fourth Circuit recognizes only three limited grounds for a district court's grant of a motion under Rule 59(e):  (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice.  Hutchinson v. Staton, 994 F.2d 1076 (4th Cir. 1993).  The Fourth Circuit has emphasized that

counsel's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion. Id. (citing Atkins v. Marathon LeTourneau Co., 130 F.R.D. 625, 626 (S.D. Miss. 1990)).

Plaintiff contends that the court's order should be amended to correct a clear error of law or to prevent manifest injustice. Plaintiff asserts that the court misinterpreted her challenge as being directed at the contract as a whole. Plaintiff asserts that she also challenged the enforceability of the arbitration clause itself, based on its unfair and inequitable effect on her rights. Specifically, Plaintiff contends that the "Wireless Industry Arbitration Rules" governing her claims includes a fee schedule that is economically onerous for her as the initiating party.

Defendant argues that Plaintiff's motion should be denied because it is based upon an issue that could have been but was not raised in conjunction with the motion to dismiss. In response, Plaintiff contends that she raised the issue of the cost of arbitration at the hearing, and that the court therefore should rule on her claim.

The court has reviewed the transcript of the April 5, 2011 hearing. The issue of the cost of arbitration was raised in response to a question by the court, as follows:

> THE COURT: Well, maybe you could start by telling me what is the issue with arbitration? Why is it that the parties don't want to do that? Why is it that you don't want to go to arbitration?
>
> MR. MAXFIELD: For two reasons, your Honor. First of all, this dispute is well outside the scope of arbitration as far as state law is concerned. And let me – I think I understand what the court is really asking me. . . . And the court's question, if I understand it, is why does [Plaintiff] not want to arbitrate, is that right?
>
> THE COURT: Yes.
>
> Mr. MAXFIELD: Two reasons, Judge. One reason is if – if the court would actually look at the arbitration agreement, this is a claim that we have submitted obviously for jurisdictional purposes is the nexus of $75,000 and, you know, based on my experience in credit reporting cases, I believe this case to be in excess of that substantially. When – if you follow the arbitration provision that's outlined in the

customer agreement, it goes into what they call the WIA rules, which is the – I think the Wireless Industry Arbitration Rules. I have looked at those rules. There are – There's a schedule for filing fees in those rules. One of the I think filing fees for a $75,000 claim is $1450 to file a case in front of an arbitrator.

And whatever Verzon says is, well, we have a mediation program, and if you go through our mediation program a head of time – and this is actually in the agreement itself – then we'll pay some of the fling fees. There's a mediation request that I have here that [Plaintiff] could submit. I got this off their website, and I'll tell the court.

But when you look at the rules for mediation, what happens when you do this is that you give up some of your rights. If you say, okay, we're going to go through this mediation process first of all – and this is contained in the customer agreement itself – the person you get as a mediator is probably going to be a Verizon employee, number one. So you don't have a level playing field to the extent a level playing field is important in mediation, getting, you know, a fair result in mediation which is the purpose of it.

The second thing is under the mediation request . . . it seems to be limited to customers with accounts. You have to be an account holder, which she's not. So as to whether she even qualifies for that mediation at all, that's another issue. I'm not sure that she does. And again, if she does qualify for it and ask for it, she's going to be a Verizon employee.

And if we were to look at the website right now, which I'm not able to do, which the agreement itself referred to, the customer agreement says, look at our website for this as to what the rules are. The rules are you I believe limit your attorneys fees to a cap of 33 percent of whatever you recover regardless of the number of hours if I understand correctly that the attorneys expended, and you also – I believe there's a recovery cap of some type, too.

So, if she goes through the rabbit hole of mediation  and gets rid of that potentially $1450 to $4300 fee if it were for example a $500[,000] claim – and I'll tell the court I have been in this courthouse and I have gotten a verdict in that range before, so that's not impossible in a case like this. . . . So it's not a situation where, you know, if you were to file a claim, she would probably have to – and to protect herself say, I'm going to not limit myself, I'm going to say this is a $500,000 claim.

That would cost her $4300 up front. **And unless she wanted to go through the mediation program, assuming she's eligible for it, number one, and number two, assuming she's willing to give up her rights to recover attorneys fees or have them capped or have her damages capped, and that's why she doesn't want to go through arbitration.**

4

**Beyond that, your Honor, I mean, there's the – you know, the larger issue, which is the legal issue, is you know, from her perspective I was in a – I signed a contract with them that was a worry-free contract. It had a trial plan. If I didn't like it, my understanding – and I think the only legitimate way to read the contract is, is that we're done, we don't have a continuing relationship any more after that point.**

. . . .

THE COURT: So your argument is that there was no agreement. Is that what –

MR. MAXFIELD: That's absolutely part of my argument. That's the first part of it, Judge. **Number one is that there is no agreement. . . . And number two, if so, is this dispute within the scope of the agreement? If you answered the first question of there's no agreement here, then the second question in <u>Aiken</u> and all that doesn't matter because the – you're not deciding whether this dispute is within the scope of the agreement because there is no agreement.**

Transcript of Hearing, 12-20 (ECF No. 26, 12-20) (emphasis added).

Plaintiff's discussion of the Wireless Industry Rules at the hearing provided an explanation

to the court as to why she finds the arbitration process to be objectionable. However, the legal

argument centered around the existence of an arbitration agreement and whether the dispute is within

the scope of the agreement, the precise issues addressed by the court in its September 9, 2011 order.

The court disagrees that Plaintiff challenged the enforceability of the arbitration clause based on any

requirement that Plaintiff would be required to pay significant fees to enforce her rights.[1] Rule 59(e)

motions may not be used to raise arguments that could have been raised prior to the issuance of an

order, nor may they be used to argue a case under a novel legal theory that the party had the ability

to address in the first instance. <u>Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir.

---

[1]Some courts have determined that the fees imposed under the Wireless Industry Rules are not substantively unconscionable. <u>See</u>, <u>e.g.</u>, <u>Gatton v. T-Mobile USA, Inc.</u>, 2003 WL 21530185 (C.D. Calif. April 18, 2003); <u>O'Quinn v. Verizon Wireless</u>, 256 F. Supp. 2d 512 (M.D. La. 2003);

1998).  Plaintiff's Rule 59(e) motion is **denied**.

      **IT IS SO ORDERED**.

                            /s/ Margaret B. Seymour
                            Chief United States District Judge

Columbia, South Carolina

May 17, 2012